UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDS SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #: _____                     │
│ DATE FILED: 8/14/2014                     │
└─────────────────────────────────────────┘
```

MANUEL GOMEZ,

                    Plaintiff,

        -v-

CITY OF NEW YORK,

                    Defendant.

No. 12-cv-6409  (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Manuel Gomez brings this action against Defendant the City of New York asserting discrimination and retaliation claims under 42 U.S.C. § 1981 ("section 1981") and various state law causes of action in connection with the termination of his employment with the New York City Police Department (the "NYPD"). Now before the Court is Defendant's motion to dismiss Plaintiff's Third Amended Complaint. For the reasons stated below, the Court dismisses Plaintiff's federal claims with prejudice and declines to exercise supplemental jurisdiction over Plaintiff's state claims.

I. BACKGROUND

A. Facts[1]

Plaintiff, a Hispanic man, was employed by the NYPD as a police officer from August 31, 1998 to August 2011. (TAC ¶ 4.)[2] In 1999, Plaintiff was the lead plaintiff in a class action

_____

[1] The facts are taken from the allegations of the Third Amended Complaint (Doc. No. 34 ("TAC")), which are assumed to be true for purposes of this motion. In deciding the motion, the Court has considered Defendant's memorandum in support of the motion (Doc. No. 38 "Mem.")), Plaintiff's memorandum in opposition (Doc. No. 40 ("Opp.")), and Defendant's reply memorandum (Doc. No. 41 ("Rep.")).

[2] The Third Amended Complaint is internally inconsistent about whether Plaintiff was

brought by the Latino Officers Association ("LOA") against the NYPD concerning the NYPD's policies toward minority employees. (*Id.* ¶¶ 10–12.)

On August 28, 2009, Plaintiff, his then-girlfriend, Janice Rivera, and several bystanders were involved in a verbal and physical altercation in the Bronx.[3] (TAC ¶ 13.) According to the disciplinary specifications that were later filed, Plaintiff got into a fight with Rivera and, without identifying himself as a police officer, pointed his gun at several bystanders who attempted to intervene. (*See generally* Decl. of Adam E. Collyer, dated Sept. 16, 2013, Doc. No. 39 ("Collyer Decl.") Ex. A. ("Specs.").) NYPD officers eventually arrived at the scene and arrested Plaintiff, but not Rivera. (TAC ¶¶ 13, 18.) The officers took Plaintiff to the 45th Precinct police station for processing. (*Id.* ¶ 14.) At the station, one of the officers, Sergeant Jude Norberg, commented to another officer that Plaintiff was a member of the LOA and referred to Plaintiff's past involvement in lawsuits against the NYPD. (*Id.* ¶ 15.) Another officer called Plaintiff a racial slur, to which Sergeant Norberg responded, "You're right. Don't worry, we got him." (*Id.* ¶ 21.)

According to the Third Amended Complaint, the officers conducted their investigation in a one-sided manner. They recorded witness statements that incriminated Plaintiff, but failed to record witness statements that could have been exculpatory. (*Id.* ¶¶ 19–20.) The officers also attempted to persuade Rivera to press charges against Plaintiff, despite her repeated insistence that Plaintiff had done nothing wrong. (*Id.* ¶ 17.) Following the police investigation, Plaintiff was arraigned and criminally charged in Bronx Criminal Court for his conduct in the altercation.

---

terminated on August 9, 2011 or August 11, 2011. (*Compare* TAC ¶ 4, *with id.* ¶ 36.) The precise date of termination is not relevant to any of the issues raised in the instant motion.

[3] There is a discrepancy between the Third Amended Complaint, which alleges that the incident took place on August 28, 2009 (TAC ¶ 13), and the documents incorporated by reference in the Third Amended Complaint, all of which describe the incident as having taken place on August 27, 2009 (*see* Doc. No. 39 Exs. A, B, & C). Since nothing turns on this discrepancy, the Court will assume that the August 28 date is correct for purposes of this motion.

(*Id.* ¶ 22.)   The Bronx County District Attorney's Office subsequently dropped the criminal charges against Plaintiff on March 1, 2010.  (*Id.* ¶ 25.)

On September 28, 2009, while the criminal charges were still pending, the NYPD commenced disciplinary proceedings against Plaintiff in connection with his conduct during the August 28 incident.  (TAC ¶ 30; Specs.)  The disciplinary specifications were brought by Deputy Inspector Michael Yanosik and approved by Inspector Thomas Pellegrino, and charged Plaintiff with "conduct prejudicial to the good order, efficiency or discipline of [the NYPD]," specifically citing the following misconduct:

(1) getting into a verbal and physical altercation with Rivera, and preventing her from leaving the scene;

(2) taking Rivera's property without authority;

(3) getting into a physical altercation with Christopher Rinando and striking Rinando with a firearm;

(4) pointing his gun at Rinando, Richard Gonzalez, and Frank Ninivaggi;

(5) failing to identify himself as a member of the NYPD during the incident;

(6) identifying himself as a "Government Agent" during the incident;

(7) resisting arrest by refusing to comply with an order by an NYPD captain to produce identification; and

(8) resisting arrest by refusing to comply with an order by Sergeant Norberg to get up against a vehicle.

(TAC ¶ 30; Specs.)

On November 20, 2009, after the disciplinary specifications had been filed but before the criminal charges had been dropped, Plaintiff filed a Notice of Claim with the Office of the New

3

York City Comptroller, asserting claims for wrongful arrest, unlawful imprisonment, defamation, slander, physical injury, and intentional infliction of emotional distress arising out of his arrest and subsequent detention.[4]   (TAC ¶ 26; Collyer Decl. Ex. B ("Notice of Claim").)

An administrative trial on the disciplinary specifications was held on October 13 and 14, 2010 before Assistant Deputy Commissioner David S. Weisel.  By decision dated February 28, 2011, Commissioner Weisel found Plaintiff not guilty of specifications 2 and 6 and guilty of the remaining specifications, and recommended that Plaintiff be terminated.  (TAC ¶ 35; Collyer Decl. Ex. C ("Admin. Op.") at 4, 53.)  The NYPD terminated Plaintiff in August 2011.  (TAC ¶ 36.)

Following his termination, Plaintiff applied for a number of positions in the security industry.  (TAC ¶ 41.)  While his job applications were pending, the NYPD informed potential employers that Plaintiff was terminated after he was convicted of several "crimes."  (*Id.* ¶¶ 41–42.)  As a result, some of the prospective employers declined to hire Plaintiff.  (*Id.* ¶ 43.)

### B.  Procedural History

On August 21, 2012, Plaintiff, who was then *pro se*, filed the Complaint in this action.  (Doc. No. 2.)  Plaintiff thereafter obtained counsel and filed his First Amended Complaint on March 15, 2013.  (Doc. No. 16.)  On April 11, 2013, Plaintiff agreed to dismiss, with prejudice, all claims of false arrest, malicious prosecution, excessive force, abuse of process, denial of a fair trial, denial of medical treatment, and all other claims related to his August 28 arrest and subsequent detention and prosecution.  (Doc. No. 18.)  Plaintiff filed his Second Amended

---

[4] Under New York state law, personal injury lawsuits against cities are prohibited unless the plaintiff first files a notice of claim with the appropriate municipal official.  *See* N.Y. Gen. Mun. Law §§ 50-i, 50-e.  Notices of claim against the City of New York must be filed with the Office of the New York City Comptroller.  N.Y.C. Admin. Code § 7-201.  A suit may proceed only if the Comptroller either refuses to make payment or fails to take action within thirty days.  *Id.*

4

Complaint on May 13, 2013, and his Third Amended Complaint on August 29, 2013. (Doc. Nos. 26, 34.) The Third Amended Complaint asserts discrimination and retaliation claims under section 1981, the New York State Human Rights Law, the New York City Human Rights Law, and the New York Correction Law; a claim under the New York False Claims Act;[5] and common law claims for defamation, slander, and tortious interference with business relations.

On September 16, 2013, Defendant moved to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 37.) The motion was fully briefed on October 17, 2013. (Doc. No. 41.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the

---

[5] The New York False Claims Act, N.Y. State Fin. L. §§ 187–194, creates a civil cause of action against persons who knowingly submit false claims to New York state or local governmental agencies. It includes a provision protecting whistleblowers from retaliation. *Id.* § 191.

line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

On a motion to dismiss, the Court may consider, in addition to the complaint itself, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted); *see also Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

### III. DISCUSSION

In the Third Amended Complaint, Plaintiff asserts (A) a discrimination claim under section 1981, (B) a retaliation claim under section 1981, and (C) state law claims under various causes of action. As noted above, Plaintiff's federal claims must be dismissed as a matter of law, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

#### A. Section 1981 Discrimination Claim

##### 1. Failure to State a Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," 42 U.S.C. § 1981, and, among other things, prohibits employment discrimination on the basis of race, *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). The substantive elements of a section 1981 employment discrimination claim are the same as those of a Title VII discrimination claim. *Id.* at 225; *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011). Specifically, a plaintiff must show that "(1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination based on

6

her membership in the protected class." *Hyunmi Son*, 823 F. Supp. 2d at 242. Discrimination may be established either directly or through circumstantial evidence, such as evidence that the plaintiff was treated "less favorably than a similarly situated employee ouside [the] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Birch v. JP Morgan Chase & Co.*, 685 F. Supp. 2d 350, 354 (E.D.N.Y. 2010).

Here, the section 1981 discrimination claim must be dismissed because Plaintiff has not alleged any circumstances giving rise to an inference that he suffered an adverse employment action because of discrimination. The only allegations of racial discrimination in the Third Amended Complaint are that Sergeant Norberg referenced Plaintiff's membership in the LOA and that an unnamed police officer at the 45th Precinct called Plaintiff a racial slur. (TAC ¶¶ 15, 21.) Taken as true, these allegations might establish the discriminatory motives of Sergeant Norberg and some of the other 45th Precinct officers. The fact that those officers acted with discriminatory motives, however, does not establish that the adverse employment actions Plaintiff suffered – that is, his termination and the disciplinary proceedings that led up to it, *cf. Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) – were taken with discriminatory intent. The Third Amended Complaint contains no allegations that the officers who acted with discriminatory motives had or exercised any authority to charge Plaintiff with disciplinary violations or to recommend his dismissal. Indeed, it appears that the only role those officers played was to serve as witnesses at an adversarial administrative trial. (*See, e.g.*, Admin. Op. at 21–22.)[6] The Third Amended Complaint does not allege that the individuals who apparently *did* make employment decisions with respect to Plaintiff – Deputy Inspector Yanosik and Inspector

---

[6] Sergeant Norberg testified at the administrative trial. (Admin. Op. at 21–22.) Several other police officers testified at the trial, but it is unclear whether any of them is the officer who Plaintiff alleges used the racial slur at the police station.

Pellegrino, who brought and approved the disciplinary specifications, and Commissioner Weisel, who presided over the administrative trial and recommended Plaintiff's termination (*see* Specs. at 5–6; Admin Op. at 1) – made those decisions for discriminatory reasons. Furthermore, the Third Amended Complaint does not allege that Plaintiff was treated any differently from similarly situated NYPD officers outside of the protected class.

The Court notes that the so-called "cat's paw" theory of liability articulated by the Supreme Court in *Staub v. Proctor Hospital* does not save Plaintiff's claim. In that case, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable [for employment discrimination]."[7]  131 S. Ct. 1186, 1194 (2011). Under the "cat's paw" theory, named after one of Aesop's fables, "a final decisionmaker that relies . . . on an improperly motivated recommendation from a subordinate may render the municipality liable because the subordinate, although not formally delegated the power to make decisions, acts as the municipality's agent." *Nagle v. Marron*, 663 F.3d 100, 117 (2d Cir. 2011). Although the Second Circuit has not explicitly adopted the cat's paw theory in contexts beyond the USERRA, *see Nagle*, 663 F.3d at 118 ("To date, our Circuit has neither accepted nor rejected the cat's paw approach."); *see also Adamczyk v. New York Dep't of Corr. Servs.*, 474 F. App'x 23, 26 (2d Cir. 2012) (assuming, in light of *Staub*, that cat's paw theory is available for Title VII), many district courts in the Circuit have applied it, *Kregler v. City of New York*, 987 F. Supp. 2d 357, 366 n.5 (S.D.N.Y. 2013) (citing cases).

---

[7] *Staub* itself was addressed to the Uniformed Services Employment and Reemploment Rights Act ("USERRA"), but the Supreme Court suggested that similar analysis would apply to Title VII.  131 S. Ct. at 1190–91. As discussed, section 1981 claims are generally analyzed under the same body of law as Title VII claims.

Even assuming the theory is available in this Circuit for section 1981 claims, it is inapplicable here because there is no allegation that Sergeant Norberg and the other 45th Precinct officers acted as Plaintiff's supervisors, *Staub*, 131 S. Ct. at 1194 ("We express no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision."), or as agents of the decisionmakers, *Nagle*, 663 F.3d at 117. Courts in this Circuit have declined to extend the cat's paw theory beyond the circumstances described in *Staub*. *See Kregler*, 987 F. Supp. 2d at 368 ("Cat's paw liability is based on agency principles. Thus[,] a substantial question arises as to whether a bad actor with whom the decisionmaker has no official connection, and to whom the decisionmaker has not delegated authority to carry out any official action, may legally be deemed an agent of that decisionmaker."); *Abdelhadi v. City of New York*, 08-cv-380 (FB), 2011 WL 3422832, at *5 (E.D.N.Y. Aug. 4, 2011) (same); *cf. Staub*, 131 S. Ct. at 1193 (observing that "the biased supervisor is not analogous to a [biased] witness at a bench trial"). Here, neither Sergeant Norberg nor the unnamed officer are alleged to have been Plaintiff's supervisors; to the contrary, they just happened to be on duty at the 45th Precinct, where Plaintiff was taken after his arrest. Again, Plaintiff alleges no facts to suggest that the decisionmakers in Plaintiff's eventual termination – Yanosik, Pellegrino, and Weisel – took their cues from or simply rubberstamped the actions of Norberg or anyone else who may have possessed a discriminatory motive. As a result, even taking the allegations of the Third Amended Complaint to be true, it is quite clear that Plaintiff has failed to state a claim for discrimination under section 1981.

## 2. Municipal Liability

Plaintiff's section 1981 discrimination claim is legally defective for another reason. The Second Circuit has held that "when the defendant sued for discrimination under § 1981 or § 1983

is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226.  Here, even assuming Plaintiff could plead that Sergeant Norberg or the other officers at the 45th Precinct exercised decisionmaking authority over his disciplinary charges and termination, he nowhere pleads that the officers' actions were taken pursuant to a municipal policy or custom.  Thus, Plaintiff's section 1981 discrimination claim must be dismissed on this ground as well.

### B. Section 1981 Retaliation Claim

Section 1981 provides a cause of action for individuals who are retaliated against for complaining about discrimination. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).  A section 1981 retaliation claim includes the same substantive elements as a Title VII retaliation claim, namely, "(1) participation in a protected activity; (2) [defendant's knowledge] of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citations and internal quotation marks omitted).

Here, Plaintiff claims that Defendant retaliated against him for participating in a 1999 class action lawsuit against the NYPD.  However, Plaintiff has alleged no facts showing a causal connection between the lawsuit and the adverse employment action taken against him.  Again, the only allegation touching on the 1999 lawsuit is that Sergeant Norberg referenced Plaintiff's membership in the LOA and past involvement in litigation at the police station.  (TAC ¶ 15.) That allegation is inadequate to establish the required causal nexus.  As discussed, neither Sergeant Norberg nor any of the officers who allegedly heard his comment took any adverse employment actions against Plaintiff or had the authority to do so.  There is also no allegation that any of the individuals who took adverse employment actions against Plaintiff were

10

motivated by – or even aware of – the 1999 lawsuit.[8]  In short, Plaintiff has pleaded no facts establishing a causal nexus between the protected activity, the 1999 lawsuit, and the adverse employment actions, the disciplinary charges and termination.

Plaintiff also argues that Defendant retaliated against him for filing his November 20, 2009 Notice of Claim.  (Opp. at 13.)  This argument fails for the simple reason that filing the Notice of Claim under these circumstances was not a protected activity.  An individual "engages in protected activity under § 1981 when she complains about or otherwise opposes conduct that she reasonably believes to have violated § 1981." *Hexemer v. Gen. Elec. Co.*, 12-cv-1808 (LEK) (CFH), 2013 WL 4854350, at *4 (N.D.N.Y. Sept. 11, 2013); *cf. Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding, in Title VII context, that protected activity includes "formal charges of discrimination . . . as well as informal protests of discriminatory employment practices").  Here, however, Plaintiff's Notice of Claim makes no mention whatsoever of discrimination. (*See* Notice of Claim.)  Hence, Plaintiff's filing of the Notice of Claim was not a protected activity and cannot form the basis of a section 1981 retaliation claim.  Plaintiff's retaliation claim must therefore be dismissed.

---

[8] To be sure, Plaintiff need not allege "that the very *agents* of the [employer] who engaged in retaliatory actions against [him] [knew] of [his] protected activity." *Gordon v. New York City Board of Education*, 232 F.3d 111, 117 (2d Cir. 2000).  It is adequate to show that the "[employer], *qua* [employer], knew of [the] protected activity": thus, the causal nexus can be established by alleging either that the agent who retaliated acted with "knowledge of the protected activities" or that the agent "act[ed] explicitly or implicit[ly] upon the orders of a superior who [had] the requisite knowledge." *Id.*  Here, there is no allegation that anyone other than Sergeant Norberg and the officers who heard the comment had knowledge of Plaintiff's prior lawsuit.  As discussed, none of these individuals were supervisors of Plaintiff or exercised any decisionmaking authority over his employment.  The Third Amended Complaint does not allege that Deputy Inspector Yanosik, Inspector Pellegrino, and Commissioner Weisel – the individuals who *did* exercise decisionmaking authority over Plaintiff's employment and took adverse action against him – had knowledge of the prior lawsuit or acted at the instruction of Norberg or a superior with such knowledge.  Furthermore, the cat's paw theory is unavailable here for the reasons discussed in Part III.A.1.

11

C. State Law Claims

Plaintiff brings state statutory claims for discrimination, retaliation, and false claims, and common law claims for defamation, slander, and tortious interference with business relations arising out of Defendant's alleged statements to prospective employers. In light of the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims.

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over pendent state law claims if all claims over which the Court has original jurisdiction have been dismissed. As the Second Circuit has noted, the language of the statute "is permissive rather than mandatory," and district courts may exercise their discretion to retain jurisdiction over state law claims in appropriate cases. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). That discretion is "not boundless," however; district courts should generally decline to exercise supplemental jurisdiction "where the federal claims had been dismissed at a relatively early stage and the remaining claims involve[] issues of state law that [are] unsettled." *Id.*; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[Where] the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

Both considerations weigh in favor of declining supplemental jurisdiction here. First, this case is still in its early stages:  no discovery has taken place and no date for trial has been set.

12

Second, adjudicating Plaintiff's claims will likely require the Court to delve into unsettled issues of state law. Defendant seeks to dismiss all of Plaintiff's state claims – which include claims for discrimination and retaliation under the New York State and New York City Human Rights Laws – on the ground that Plaintiff failed to comply with the notice-of-claim requirement set forth in sections 50-e and 50-i of the New York General Municipal Law. Yet, whether that notice-of-claim requirement even applies to Plaintiff's state law discrimination claims is an issue of state law about which federal courts in this district have disagreed. *See Aggarwal v. New York City Health & Hosp. Corp.*, 98-cv-5063 (DLC), 2000 WL 172787, at \*9 (S.D.N.Y. Feb. 10, 2000) ("Although some decisions of this Court have dismissed state discrimination claims against municipal defendants for failure to file a notice of claim, [citing cases], others have held that such discrimination claims are not tort actions and are therefore not subject to Section 50-e's notice of claim requirement. [citing cases]."); *see also Dahbany-Miraglia v. Queensboro Cmty. Coll.*, 03-cv-8052 (SAS), 2004 WL 1192078, at \*5 (S.D.N.Y. May 27, 2004) ("District courts in this circuit are split on whether the notice of claim requirement applies to state discrimination claims.").

In light of the early stage of this case and the likelihood that at least some of Plaintiff's state claims involve unsettled issues of state law, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims are dismissed without prejudice.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is GRANTED. Plaintiff's federal claims are DISMISSED WITH PREJUDICE, and

Plaintiff's state claims are DISMISSED WITHOUT PREJUDICE.  The Clerk of the Court is

respectfully directed to terminate the motion pending at Doc. No. 37 and to terminate this case.

SO ORDERED.

Dated:       August 14, 2014
             New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE