UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANUEL GOMEZ,

                           Plaintiff,

-v-

CITY OF NEW YORK,

                           Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-2-16

No. 12-cv-6409 (RJS)
OPINION AND ORDER

---

RICHARD J. SULLIVAN, District Judge:

     In August 2012, Plaintiff Manuel Gomez filed a complaint alleging that the City of New York (the "City" or "Defendant") and the New York City Police Department deprived him of various constitutional rights. On April 11, 2013, Plaintiff, through his attorney, signed a stipulation and order of dismissal (the "Stipulation") voluntarily dismissing most of his claims. (Doc. No. 18.) Shortly thereafter, Plaintiff wrote a letter to the Court stating that his attorney did not have authority to sign the Stipulation. (Doc. No. 21.) The Court denied reconsideration of the dismissal, and Plaintiff subsequently appealed that decision. (Doc. Nos. 24, 47.) On December 9, 2015, a mandate from the Second Circuit issued, instructing the Court to hold an evidentiary hearing to determine whether Plaintiff's lawyer had the authority to sign the Stipulation. (Doc. No. 50.) Having conducted such a hearing, the Court finds that Plaintiff has not rebutted the presumption that his lawyer had authority to sign the Stipulation and, accordingly, the Court once again denies Plaintiff's motion for reconsideration of the dismissal of the claims pursuant to the Stipulation.

## I. BACKGROUND

     When he first initiated this action, Plaintiff, a former New York City police officer, was proceeding *pro se*. He filed a complaint alleging that the City and the New York City Police Department "violat[ed his] civil rights" and "wrongful[ly] dismiss[ed him]" from the Police

Department" in connection with Gomez's arrest on August 27, 2009 while he was off duty. (Doc. No. 1.) Specifically, Gomez alleged that after calling 911 during an incident in which he was attacked, he was "arrested and detained in jail for 5 days." (*Id.*) Gomez further stated that, despite the subsequent dismissal of the charges against him, he was "fired . . . for the incident that [he] was found innocent of in criminal court." (*Id.*)

Gomez subsequently retained counsel, Trevor A. Reid, who filed a notice of appearance in this matter on February 5, 2013. (Doc. No. 13) On March 15, 2013, Reid, on behalf of Gomez, filed a first amended complaint alleging claims pursuant to 42 U.S.C. §§ 1983 and 1985 and 18 U.S.C. § 245 for violations of Gomez's constitutional rights, including claims for false arrest, malicious prosecution, and discrimination on the basis of race and national origin. (Doc. No. 16.) On April 11, 2013, Reid signed a stipulation on his client's behalf dismissing Gomez's claims against the City relating to his arrest and prosecution, but excluding "any possible claims related to [P]laintiff's previous employment with the New York City Police Department." (Doc. No. 18.) The Court so-ordered the Stipulation on the same day. (*Id.*) On April 12, 2013, the Court held an initial conference at which Gomez was present, along with Reid and counsel for Defendants. (*See* Minute Entry, dated April 12, 2013, the "April 12 Conference.") At that conference, the Court and the parties discussed the Stipulation and Plaintiff's intention of filing an amended complaint. At the end of the conference, the Court directed Plaintiff to file an amended complaint relating to his remaining claims for employment discrimination by May 13, 2013. (*Id.*) On April 23, 2013, John Scola, Jr., filed a notice of appearance on behalf of Plaintiff (Doc. No. 23), and on May 13, 2013, Plaintiff filed a second amended complaint, alleging federal and state law claims of employment discrimination (Doc. No. 26). In response to a contemplated motion to dismiss from Defendant, on August 29, 2013, Plaintiff filed a third amended complaint, alleging nineteen causes of action relating to Gomez's termination from his job as a police officer. (Doc. No. 34.) On

August 14, 2014, the Court granted Defendant's motion to dismiss the third amended complaint for failure to state a claim. (Doc. No. 43.)

As relevant here, on April 16, 2013, just four days after the initial conference, Gomez filed a *pro se* "motion for reconsideration and withdrawal of attorney," in which he asked the Court to "reopen" his "court case because my attorney filed a stipulation and order of dismissal without my knowledge or my consent." (Doc. No. 20.) Gomez attached a letter to his motion, stating that Reid "did not have my permission to dismiss all my claims, and I was never asked if I would agree to such an insane motion." (Doc. No. 21, the "April 16 Letter.") On May 6, 2013, the Court denied the motion for reconsideration, finding that the conduct of the attorney, Reid, was imputed to his client, Gomez. (Doc. No. 24.) The Court also noted that Gomez was present at the April 12 Conference during which the Stipulation was discussed and that he did not object at that time. (*Id.*) Plaintiff subsequently appealed that Order to the Second Circuit. (Doc. No. 47.)

On November 5, 2015, the Second Circuit issued an opinion remanding the case to this Court based on its finding that the record was insufficient to determine whether Plaintiff's attorney had authority to agree to the Stipulation. *Gomez v. City of New York*, 805 F.3d 419 (2d Cir. 2015). Although the Second Circuit recognized that an attorney is presumed to act on behalf of his client, *id.* at 424, it concluded that the April 16 Letter "raised a factual dispute concerning [Gomez's] attorney's authority to stipulate to a dismissal of his claims," *id.* at 421. Accordingly, the Second Circuit instructed the Court "to hold an evidentiary hearing to address this dispute." *Id.* The mandate from the Second Circuit issued on December 9, 2015. (Doc. No. 50.)

On February 17, 2016, the Court held an evidentiary hearing on the issue of whether Reid had authority to sign the Stipulation. (*See* Minute Entry, dated February 17, 2016.) The Court heard testimony from Gomez, now represented by Chukwuemeka Nwokoro and by Scola, and from Reid. Assistant Corporation Counsel Joseph Gutman also attended the hearing on behalf of

3

the City. At the hearing, Nwokoro rested after asking Gomez one wholly conclusory and leading question: "[d]id you at any time give your prior counsel, Mr. Reid, permission to withdraw any of your claims in this case?" The Court, over Nwokoro's objection, then conducted a more thorough examination of both Gomez and Reid to determine how the Stipulation came to be signed and whether it was done with Gomez's knowledge and consent.

## II. LEGAL STANDARD

The actions of a party's attorney are generally imputed to the party. *See United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976) ("This Circuit has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or the rules of the court, or his inability to efficiently manage his caseload."); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (describing "our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent"). While a court "'presume[s] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so,' this presumption is rebuttable." *Gomez*, 805 F.3d at 424 (quoting *Pereira v. Sonia Holdings Ltd. (In re Artha Mgmt.)*, 91 F.3d 326, 329 (2d Cir. 1996)). However, if a party challenges the authority of his attorney to settle the case, he "bear[s] the burden of proving that [he] did not give him authority to settle the case." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996); *see also United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993) ("The burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial."). To meet that burden, a party must present "affirmative evidence" to show that a lawyer did not have that authority. *In re Artha Mgmt., Inc.*, 91 F.3d at 329.

In *Gomez*, the Second Circuit held that an evidentiary hearing is required "[i]n circumstances where a former attorney and his client dispute the giving of authority." 805 F.3d at

4

424 (quoting *Michaud v. Michaud*, 932 F.2d 77, 81 (1st Cir. 1991)). "After such a hearing, of course, the court can resolve any conflict in the testimony; it may, for example, disbelieve the client. But such a determination cannot be made without first giving the client a fair opportunity to have his say." 805 F.3d at 424 (quoting *Michaud*, 932 F.2d at 81).

### III. DISCUSSION

Having conducted an evidentiary hearing and reviewed the parties' prior filings in this case, the Court concludes that Gomez has not rebutted the presumption that Reid had authority to sign the Stipulation. Specifically, the Court finds that Gomez's claims that he never discussed the Stipulation with Reid and never consented to the dismissal were not credible. The Court is more persuaded by the testimony of Reid, who maintained that he discussed the Stipulation with Gomez before he signed it and that Gomez never told him not to.

Gomez and Reid present strikingly different accounts of the interactions between them that ultimately led to the Stipulation. As an initial matter, Gomez and Reid appear to disagree over the level of contact that they had throughout Reid's representation of Gomez. Gomez claimed at the hearing that although he "called [Reid] a few months prior [to the April 12 Conference]," he had not met with or spoken to Reid about the Stipulation before the April 12 Conference. (Transcript of Proceedings, dated February 17, 2016 ("Tr."), at 15:1-19.) Yet, while Gomez insisted that he barely ever spoke to Reid, Reid stated that "Mr. Gomez was at my house, my office more frequently than any other plaintiff I had because we both had a military background and I felt sorry for him. He was there all the time." (*Id.* 46:15-18.) Indeed, before ever filing an amended complaint, Reid remembered meeting Gomez twenty to thirty times. (*Id.* 46:21-25.) Moreover, while Gomez asserted that he never spoke to Reid after the April 12 Conference, Reid said he spoke to Gomez four or five more times. (*Id.* 58:24-59:3.) These differences are impossible to reconcile, and while the Court is reluctant to accuse either witness of outright perjury, the Court

5

finds Reid's testimony to be more credible in describing the relationship between the attorney and his client.

Indeed, several inconsistencies in Gomez's testimony lead the Court to doubt Gomez's credibility, including his assertions that he did not meet with his lawyer to discuss the Stipulation or have an understanding of its contents. For example, Gomez stated several times at the hearing that he flew back from Afghanistan approximately two days before the April 12 Conference. (*Id.* 14:11, 19:19-20:1.) But in his April 16 Letter, Gomez advised that he had been home "for [a] couple weeks" before the conference. (Doc. No. 21.) When confronted with the April 16 Letter at the hearing and asked about the inconsistency, Gomez stated that the letter was incorrect, notwithstanding the fact that it was written just days after the April 12 Conference. (Tr. 21:2-3.)

The Court was equally puzzled by Gomez's reaction when the Court presented him with a letter he submitted to the Court in December 2012 (Doc. No. 8), at which time Gomez had not yet retained Reid and was proceeding *pro se*. (Tr. at 11:19-20:10). Gomez appeared to suggest that he had not written the letter and that someone had forged his signature on it. (*Id.* 11:24-25 ("No, I don't recall this letter. Actually, this is not even my letterhead."), 12:2 ("No, it's not my signature."), 12:7-10 (The Court: "You don't recall writing a letter to the Court in response to my order of December 12?" Gomez: "Not that letter, no, your Honor. I wrote a letter to you saying that my lawyer acted improperly.").) Gomez's adamant denial that his signature was on the document, without any indication as to who else might have signed the document or why, coupled with his nearly obsessive focus on his April 16 Letter, served to undermine his credibility as to what transpired before and after the Stipulation was signed.

Nor does the Court credit Gomez's account of the April 12 Conference. Because the April 12 Conference was an initial conference at which no party was contemplating filing a pre-discovery motion, the conference was not transcribed by a court reporter. Nonetheless, the

conference was memorialized in a minute entry on the docket, which indicated who was present at the conference and the deadline by which Plaintiff was to file an amended complaint. (*See* Minute Entry, dated April 12, 2013.) The Court also has a clear recollection of what occurred during the conference. Although Gomez testified that he remembered many details of the conference, including where it took place, who was present (*id.* 15:22-25), and even a comment from the Court regarding one of the lawyers (*id.* 25:20-26:6), his recollection became decidedly hazier when it came to any discussion of his claims. At the start of the hearing, Gomez acknowledged that he recalled "some discussion of dismissal of some kind at [the April 12 Conference]." (*Id.* 7:3-5.) Yet later in his testimony, Gomez asserted that "nobody said anything about a stipulation to dismiss" (*id*. 21:15-16), and that, while he "recall[ed] discussing 1983 claims, . . . the words stipulation of dismissal [were] never used" and he was never shown the Stipulation before the conference (*id.* 22:8-11). Gomez's story appeared to shift again later, as he recalled being "overwhelmed hearing [about his] 1983 claims being dismissed." (*Id.* 22:22-23.) With respect to the filing of an amended complaint on his employment discrimination claims, Gomez was once again equivocal, as he first recalled "something about an amended complaint" (*id.* 22:21-22), but then, a few minutes later, twice said that he did not recall any discussion about an amended complaint (*id.* 23:25-24:2, 26:7-9).

In sum, during the course of the hearing, Gomez's account of his interactions with Reid regarding the Stipulation and his understanding of what took place at the April 12 Conference changed. Although some of these inconsistencies may be attributable to the passage of time since these events took place, the Court simply does not credit Gomez's account that he never discussed the Stipulation with his lawyer and that he had no understanding of the dismissal of his claims at the April 12 Conference. Indeed, the Court has a distinct recollection of the Stipulation being discussed – without objection or comment by Gomez – and a further discussion about Plaintiff

7

filing an amended complaint with greater specificity and detail as to the remaining employment discrimination claims. This recollection, which is largely reflected in the Court's docketed minute entry of April 12, 2013, is hard to square with Gomez's shifting testimony. (*See* Minute Entry, dated April 12, 2013.)

By contrast, the Court finds Reid's testimony about the Stipulation and the April 12 Conference to be far more persuasive, plausible, and credible. Although Reid did not remember the specifics of his discussions with Gomez about the Stipulation, he was unwavering in his belief that he had discussed it with Gomez before signing it and that Gomez had not objected. For example, Reid stated that "I would not have signed it without" discussing it with Gomez (*id.* 30:21-22; 34:9-11), and he further testified that he "[a]bsolutely" showed the Stipulation to Gomez before the April 12 Conference (*id.* 57:8-58:21). According to Reid, Gomez's account of the events surrounding the April 12 Conference was simply "not accurate." (*Id.*) Reid stated that Gomez "was present when I told him that we were going to dismiss some of the claims" and that "I didn't hear him say no, don't do it, don't do it, anything like that. My impression was, he agreed to that." (*Id.* 36:4-10; *see also* 52:4-11 ("[Although Gomez] thought it was totally unfair that he was not going to be able to get his day in court [on the false arrest and malicious prosecution claims]. . . . [Gomez] didn't tell me not to [sign the Stipulation]. I don't remember if he consented to it at this time, but I know he didn't tell me not to.").) Later in the hearing, when asked again if he had permission to dismiss the claims, Reid reiterated "[i]n my mind, I did, your honor." (*Id.* 57:20-21.) Taken together, these statements indicate that Reid had discussed the Stipulation with Gomez, and that Gomez did not object to the dismissal of his Section 1983 claims, which Reid recalled being time barred anyway, and instead agreed to proceed with an amended complaint on his timely employment discrimination claims. As such, Reid's testimony contradicts the assertion in Gomez's April 16 motion that his "attorney filed a stipulation and order of dismissal without my

8

knowledge or . . . consent" (Doc. No. 20), and demonstrates that Reid in fact had authority to sign the Stipulation.

This conclusion is perhaps confirmed by Nwokoro's abrupt about-face at the end of the hearing, when he asked the Court to depart from the stated purpose of the hearing – the determination of whether Reid had authority to sign the Stipulation – and instead requested that the Court revive Gomez's Section 1983 claims on equitable grounds. Specifically, Nwokoro insisted that Reid was mistaken about the Section 1983 claims being time barred – at least with respect to the malicious prosecution claim (*id.* 42:24-43:15) – and asked the Court to "look at the substance of the case" to determine whether the dismissed claims were actually time barred (*id.* 69:4), and then use its discretion to reinstate any claims that were not barred (*id.* 70:18-21). As the Court stated on the record, Nwokoro's request that the Court reinstate claims because Gomez received bad advice from his counsel was improper and beside the point. (*Id.* 70:22-71:7.) Indeed, as the Second Circuit clearly recognized in *Gomez*, "courts are generally reluctant to recognize attorney error as a basis for relief from an order or judgment." 805 F.3d at 432 (citing *Cirami*, 535 F.2d at 739 ("This Circuit has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or the rules of the court, or his inability to efficiently manage his caseload.")). Moreover, given that the Second Circuit remanded this case for the limited purpose of determining whether Reid had authority to sign the Stipulation, the Court declined – and remains unwilling – to revive Gomez's claims on this new, alternate theory.

Having now conducted a hearing and given Gomez an opportunity to present evidence, the Court concludes that Gomez has not rebutted the presumption that Reid had the authority to sign the Stipulation. Gomez's testimony at the hearing did not come close to satisfying his "burden of proving that [he] did not give [Reid] authority to settle the case." *In re Artha Mgmt., Inc.*, 91 F.3d

9

at 329. Other than his one-sentence answer to Nwokoro's sole, leading question, Gomez did not present any affirmative evidence that Reid did not have authority to sign the Stipulation, nor did he state that he had told Reid not to sign the Stipulation. Rather, Gomez's testimony about the Stipulation and the April 12 Conference was inconsistent and unconvincing, and contradicted by (1) Reid's credible statements that he had discussed the Stipulation with his client before signing it and that Gomez did not object, and (2) Gomez's own conduct at the April 12 Conference, at which the Stipulation and proposed amended complaint were discussed without comment or objection by Gomez. In sum, based on the testimony presented at the hearing, the Court finds that Reid had authority to sign the Stipulation and that the claims were thus properly dismissed.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's motion for reconsideration of the April 11, 2013 stipulation of dismissal is DENIED. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 2, 2016
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE